UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWAYNE ELLISON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security,<br><br>    Defendant. | NO.   CV 08-3206-CT<br><br>OPINION AND ORDER |

For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

## SUMMARY OF PROCEEDINGS

On May 15, 2008, plaintiff, Dewayne Ellison ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On August 26, 2008, plaintiff filed a brief with points and authorities. On September 25, 2008, the Commissioner filed a brief in opposition.

SUMMARY OF ADMINISTRATIVE RECORD

1. Administrative Proceedings

Plaintiff filed a prior application for Supplemental Security Income ("SSI") on October 10, 2000. That application was denied after a hearing before an Administrative Law Judge ("ALJ") in a decision dated May 28, 2002. (TR 41-48).[1] Plaintiff apparently did not seek review of that decision. (TR 11).

On September 30, 2005, plaintiff filed a second application for SSI benefits, which is the application at issue here. In connection with the 2005 application, plaintiff alleges disability since October 31, 1988 due to "bipolar schizophrenic, seizures, plate in left knee, legally blind, bullet in forearm and problems with spleen." (TR 69, 73). The application was denied. (TR 52-56).

Plaintiff filed a request for a hearing, and on September 10, 2007, plaintiff, represented by an attorney, appeared and testified before a second ALJ. (TR 265-87). On October 24, 2007, the ALJ issued an unfavorable decision. Essentially, the ALJ found that rules of administrative finality barred reopening of the 2002 decision and that plaintiff's application for SSI benefits had no retroactive effect in any event. See 20 C.F.R. § 416.501 ("Payment for benefits may not be made for any period that precedes the first month following the date on which an application is filed . . . ."). The ALJ further found that a presumption of continuing non-disability applied because plaintiff had not demonstrated any changed circumstances since the prior unfavorable

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

decision was issued. (See TR 11-19). Accordingly, the ALJ "adopted and maintained" the findings of the prior ALJ. (See id.)

On March 17, 2008, plaintiff's request for review of the ALJ's decision was denied. (TR 3-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

2. Summary Of The Evidence

The ALJ's 2007 decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1. The ALJ erred by holding that plaintiff can perform the jobs of sales counter clerk and charge account clerk;
2. The ALJ erred by failing to make proper credibility findings;
3. The ALJ erred by failing to properly consider lay witness testimony; and
4. The ALJ erred by failing to obtain vocational expert testimony in light of plaintiff's significant non-exertional limitations.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

## DISCUSSION

### 1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed

impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. Issues

   A. Step Five Determination

Plaintiff contends that the ALJ erred in making the step five determination that plaintiff was not disabled by finding that plaintiff can perform the following jobs identified in the Dictionary of Occupational Titles ("DOT"): sales counter clerk (DOT No. 249.366-010) and charge account clerk (DOT No. 205.367-014).

Plaintiff fails to address, or even acknowledge, the prior 2002 decision in which the prior ALJ, based on the testimony of a vocational expert, made the findings that plaintiff could perform these jobs. In the 2007 decision, the ALJ simply adopted those prior findings based on res judicata principles.

The principles of res judicata apply to administrative decisions, although the doctrine is not as rigidly applied to administrative proceedings as it is to judicial proceedings. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). The Commissioner may apply res judicata to

bar reconsideration of a period with respect to which he has already made a determination, by declining to reopen the prior application, a decision that is not generally subject to judicial review. <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1996). Further, where the Commissioner has made a determination of non-disability in a prior decision, the prior determination creates a presumption of continuing non-disability for any period after the date of the prior decision. See <u>Lester v. Chater</u>, 81 F.3d at 827-28; <u>Chavez</u>, 844 F.2d at 693. The presumption does not apply, however, if there are "changed circumstances," such as a worsening of the plaintiff's condition. <u>Id.</u>

Here, the ALJ found that the circumstances had not materially changed since the date of the prior decision. Plaintiff, who is represented by counsel, does not dispute this finding or demonstrate why res judicata principles should not bar his current claim. Rather, plaintiff simply attacks the finding that he can perform the sales clerk and charge account clerk jobs. As noted, this finding was originally made by the ALJ in the 2002 decision and was "adopted and maintained" by the ALJ who issued the 2007 decision. (TR 17, 46).

Accordingly, remand is not warranted on this ground. However, this matter is being remanded for further consideration of plaintiff's uncle's statements. Accordingly, on remand the Commissioner will have another opportunity to evaluate plaintiff's RFC and ability to work, and obtain the further testimony from a vocational expert if necessary, in light of his reconsideration of that evidence.[2]

---

[2] In the event that the parties return to court after the administrative proceedings on remand and raise the issue of res judicata, the parties should discuss and consider whether and how plaintiff's lack of representation in the prior 2002

B. <u>Credibility</u>

Plaintiff also contends that the ALJ failed to properly evaluate the credibility of his allegations.

The Commissioner's assessment of plaintiff's credibility should be given great weight. <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). However, to reject a plaintiff's subjective complaints, the ALJ "must provide cogent reasons for the disbelief." <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)(citation omitted). In the absence of evidence of malingering, the ALJ's reasons for rejecting plaintiff's testimony "must be clear and convincing." <u>Id.</u> (citation omitted).

Here, the ALJ gave a number of reasons for finding plaintiff's testimony of disabling symptoms not entirely credible. For example, the ALJ found that the medical evidence did not show any changes in his condition or demonstrate any limitations beyond those set forth in the assessed RFC. (TR 14-15). Although lack of medical evidence cannot form the sole basis for discounting pain or symptom testimony, it is a factor that the ALJ can consider in his credibility analysis. <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

In addition, the ALJ noted discrepancies in plaintiff's reports concerning his work and medical history. In some instances, plaintiff admitted to brief past employment, while on his disability application,

---

administrative proceedings, (TR 41), impacts the applicability of that doctrine. See <u>Gregory v. Bowen</u>, 844 F.2d 664, 666 (9th Cir.1988)(finding res judicata inappropriate because plaintiff's new application raised new impairments, but also noting that "the rigid application of res judicata would be undesirable" because plaintiff was unrepresented in prior proceedings); <u>see</u> <u>also</u> <u>Thompson v. Schweiker</u>, 665 F.2d 936, 940 (9th Cir. 1982)(stating that enforcement of administrative res judicata must be tempered by fairness and equity).

7

he claimed that he has never worked. (See TR 63, 64, 74, 220). Although plaintiff's counsel indicates in her brief that this was a mistake, such discrepancies are properly considered in determining credibility. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.2001)("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony.")(citation omitted). Similarly, plaintiff gave inconsistent statements concerning his history of seizures. (See TR 219, 280).

The ALJ also noted plaintiff's past conviction for petty theft. Past conduct involving dishonesty is relevant to a determination of a plaintiff's credibility. See id.; see also Albidrez v. Astrue, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007)(finding that ALJ's adverse credibility finding supported by plaintiff's criminal history, which included showing false identification to a police officer and robbery).

Accordingly, the ALJ's credibility determination was supported by substantial evidence and is free from material legal error and remand is not warranted on this issue.

C. <u>Lay Witness Testimony</u>

The third issue plaintiff raises concerns the October 31, 2005 third-party statement submitted by plaintiff's uncle, Thad Greenwood. Plaintiff contends that the ALJ failed to address this third-party statement.

In determining whether a plaintiff is disabled, an ALJ must consider lay witness testimony concerning a plaintiff's ability to work. Stout v. Commissioner of Soc. Security Admin., 454 F.3d 1050, 1053 (9th

Cir. 2006)(citations omitted). Lay testimony "as to a [plaintiff's] symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." Id. (citations omitted)(ALJ erred in ignoring lay testimony from plaintiff's sister and a letter from plaintiff's brother-in-law, with whom plaintiff had worked). Consequently, "[i]f the ALJ wishes to discount the testimony of the lay witness, he must give reasons that are germane to each witness for doing so." Id. (citations omitted).

Further, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056.

Here, the ALJ failed to discuss or mention the "Function Report - Adult - Third Party" submitted by plaintiff's uncle, Mr. Greenwood. (TR 95). Mr. Greenwood, who saw plaintiff daily, stated that plaintiff essentially does nothing except watch television, has to be reminded to take his medication, go to the doctor, and see his probation officer, does not go outside much because he does not trust people, and essentially never socializes with other people. (TR 95-100). Mr. Greenwood also reported that plaintiff cannot work around others, does not get along with authority figures, does not handle stress well, has a short attention span, and his ability to follow instructions is "not good at all." (TR 100-01). He stated that plaintiff can walk "at least 100 feet with use of cane" before taking a rest and needed to rest 20-30 minutes before starting to walk again. (TR 100).

It is not clear from Mr. Greenwood's written report whether he contends that plaintiff's condition has worsened since the 2002 decision. However, in the 2002 decision, the ALJ reported that Mr. Greenwood testified that plaintiff "visits with his sister on a weekly basis" and "that the [plaintiff's] friends frequently visit him." (TR 45). The 2005 report is either inconsistent with that testimony or represents a reported change in plaintiff's condition for the worse in a manner that would impact his ability to work. Although the prior ALJ's RFC included limitations on interaction with co-workers, see TR 47 ("He requires a job which allows for only brief superficial contact with co-workers and the general public"), Mr. Greenwood's claim that plaintiff essentially isolates himself, cannot get along with authority figures, and has unusual levels of distrust and avoidance of other people suggests an inability to engage in even the limited contact provided for in the prior ALJ's RFC. Accordingly, the ALJ's failure to discuss Mr. Greenwood's 2005 third party statement was not harmless error. See Stout, 454 F.3d at 1056.

Remand is warranted on this issue.

D. Vocational Expert Testimony

Finally, plaintiff contends that the ALJ failed to obtain the testimony of a vocational expert to determine whether plaintiff could perform other work that exists in the national economy despite the fact that the plaintiff has significant non-exertional limitations as set forth in the statement of plaintiff's uncle. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.1988)(ALJ cannot rely on the medical-vocational guidelines alone "[w]hen a [plaintiff]'s non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work

permitted by the claimant's exertional limitations.").

However, as discussed above, the ALJ adopted the findings set forth in the prior 2002 decision and in those prior proceedings, the ALJ did obtain the testimony of a vocational expert, although that testimony is not part of the administrative record before this court. In any event, since this matter is being remanded, the Commissioner will have an opportunity to determine whether additional testimony of a vocational expert is required in light of his consideration of the statements of plaintiff's uncle.

## REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the present record is insufficiently developed.

## CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: 9/29/08

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

11

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Dewayne Ellison<br>(Claimant) | Supplemental Security Income |
| (Wage Earner) | (Social Security Number) |

This case is before the Administrative Law Judge (ALJ) on a Request for Hearing filed by the claimant, who is dissatisfied with the prior determination finding him not disabled based on the application for supplemental security income (SSI) benefits that he protectively filed on September 30, 2005. The claimant testified at a hearing held on September 10, 2007, in West Los Angeles, California, and was represented by Attorney Daniel Keenan (Law Offices of Bill LaTour).

The general issue is whether the claimant is disabled under Section 1614(a)(3)(A) of the Social Security Act. The specific issue is whether is he is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be last for at least 12 continuous months.

EVALUATION OF THE EVIDENCE

The claimant is a 42 year old man with an 11th grade education. His precise employment history is unclear. In conjunction with the pending application, the claimant asserted that he became unable to work on October 31, 1998, basing his claim on bipolar schizophrenia, seizures, plate in left knee, legally blind, bullet in forearm and problems with his spleen. (Ex. B-3E).

The claimant filed a prior SSI application that was finally denied in ALJ Decision issued on June 3, 2002. Rules of administrative finality bar reopening of that Decision. Since an application for SSI has no retroactive effect, the surviving issue is limited to whether the claimant has been under a "disability" at any time since September 30, 2005.

Social Security Acquiescence Ruling 97-4(9), adopting <u>Chavez v. Bowen</u> 844, F.2d 691 ( 9th Cir. 1988) sets forth the doctrine of continuing res judicata. It requires the adjudicator of a subsequent application to adopt certain findings made by the prior ALJ, absent a showing of changed circumstances. Here, most materially, the claimant has not shown a change in the residual functional capacity assessment set forth by the prior ALJ. The ALJ found that the claimant can lift and carry up to 25 pounds frequently and 50 pounds occasionally and sit, stand,

See Next Page


EXHIBIT

Dewayne Ellison    Page 2 of 9

**12**

and walk for 6 hours each of an 8-hour work day (medium work). He further found that the claimant can occasionally climb stairs and ramps, crouch, kneel and crawl, but cannot climb ropes, ladders or scaffolding, work at unprotected heights, around hazardous machinery or dust, fumes, or toxins, or drive. He further found that the claimant can occasionally grip, grasp and twist with his left upper extremity/hand. The ALJ found that the claimant was limited to simple 1 or 2-step instructions, requires a job which allows for only brief superficial contact with co-workers and the general public and cannot perform a job which requires high production such as rapid assembly line work. More generally, in assessing the claimant's mental impairments, the ALJ found that the claimant had a mood disorder, not otherwise specified, versus bipolar depressive disorder, mixed (12.04A), and that under "B" criteria, he was mildly limited in his ability to perform activities of daily living and to maintain social functioning, had moderate difficulty maintaining concentration, persistence and pace and had not experienced repeated episodes of decompensation of extended duration. He also found that the "C" criteria of Listing 12.04 was not satisfied.

As analyzed below, the undersigned ALJ finds that the claimant maintains with the aforementioned residual functional capacity through the present date.

The prior ALJ found that the claimant could not perform his past relevant work as a warehouse laborer (see discussion below). However, using Rule 203.25, Table no. 3, at Appendix 2 of Subpart P of Regulations no. 4 (the medical/vocational 'grids') as a framework for decision and utilizing vocational expert hearing testimony, he found that the claimant could perform jobs as sales counter clerk and charge account clerk, with 89,000 jobs and 21,000 jobs, respectively, in the national economy and therefore, found the claimant "not disabled."

It is unclear from the record whether the prior ALJ correctly characterized warehouse work as relevant, given questions at to whether it was performed at the substantial gainful activity level, long enough to learn, and at least at the present date; whether it was performed within the past 15 years. In conjunction with the pending application, the claimant appears to assert-by his lack of response- that he has not worked within the past 15 years (Ex. B-3E). This is inconsistent with other evidence that may not suggest that he did warehouse work in the relevant past, but shows that he did other work. To wit, two consultative examiners report that he last worked in 2000, detailing cars, with one indicating that the work was short-lived (Exs. B-2F, B-3F). As it is unclear that this work or any other work within the past 15 years constituted the substantial gainful activity and/or other tests for relevancy, the undersigned ALJ finds that the claimant has no past relevant work.

The claimant testified that he has not had any schooling since the date that of the hearing before the prior ALJ. The undersigned adopts and maintains the finding that the claimant has an 11th grade education (defined as "limited" by regulation). The claimant has obviously aged a few years, but this is not material, as at 42, he continues to fall in the category of "younger individual".

In analyzing the pending claim under the sequential evaluation process (20 CFR 416.920), the undersigned finds that the claimant has not engaged in substantial gainful activity since September 30, 2005. The undersigned adopts and maintains the prior ALJ finding that the

See Next Page



 

Dewayne Ellison                                                                                          Page 3 of 9

**13**

claimant has the following "severe" impairments: history of seizures; mood disorder, not otherwise specified (NOS), versus bipolar depressive disorder, mixed; and rule out osteoarthritis back, left hand and left knee. He recognizes that the claimant, at least currently, is diagnosed with obesity (by a consultative physician at Ex. B-2F). The ALJ has considered this condition under Social Security Ruling 02-1p, but does not find that it is "severe" or complicates other impairments- at least, it causes no limitations greater than the assessed by the prior ALJ. The undersigned adopts and maintains the prior finding that the claimant does not have an impairment or a combination of impairments that meets or equals in severity an impairment listed at Appendix 1 to Subpart P of Regulations no. 4. As discussed above, the claimant does not satisfy B or C criteria under 12.04. Further, the claimant does not approach satisfying a listing for seizures (11.02 or 11.03) or for any musculoskeletal disorder (section 1.00). There is some confusing data regarding vision, but updated records confirm that the claimant's corrected vision does not approach listing level severity (section 2.00).

In rendering this analysis, as well as in assessing the claimant's residual functional capacity, the ALJ has considered all medically determinable impairments and their combined effect, whether or not each is "severe." He notes that the claimant does have some respiratory involvement, most recently characterized as bronchitis ( Ex. B-2F). The prior ALJ obviously considered the respiratory component in setting forth environmental limitations (see residual functional capacity), but did not term the condition "severe" given the limitations assessed. The undersigned adopts and maintains this reasoning. However, more importantly, the undersigned finds that same respiratory restriction whether or not it is identified as "severe." Similarly, the ALJ does not find "borderline intellectual functioning" a "severe" impairment, but allows for the same limitations whether or not it is so considered (see discussion below).

The ALJ does not find that the history flowing from an August 13, 2007 accident, when the claimant was apparently struck by a truck, resulted in any durationally significant change insofar as the identification of the "severe" impairments or in the analyses under the listings and of residual functional capacity.

As the ALJ does not charge the claimant with past relevant work, the burden is on SSA to identify jobs that the claimant can perform that are consistent with his age, education. lack of work experience and medical limitations.

As introduced above, the ALJ does not find that the claimant has shown a change (i.e., worsening) in his residual functional capacity since the prior Decision.

The ALJ has considered the claimant's allegations of pain and other symptoms under 20 CFR 416.929 and Social Security Ruling 96-7p. In testifying to symptoms, the claimant acknowledged that he has left knee pain that has not changed since 2002. He also testified to pain in the left leg, right forearm, lower neck, and to sharp pains in the spleen area (enlarged spleen). He referred to seizures, but explained that takes Dilantin for control and that his last attack was about four years. The claimant continued by testifying that since an August 2007 accident, he has suffered from left collar bone and left elbow fractures, swollen right knee and that he uses a hard plastic neck brace. He did not know whether he would have surgery. The claimant appeared at

See Next Page



Dewayne Ellison    Page 4 of 9

**14**

the 2007 hearing wearing a neck brace and with a cane. The claimant testified that he takes medication for paranoia and asserted that he is unable to work around other people.

In combination, several factors cause the ALJ not to give full credit to the claimant's allegations. As already noted, the claimant reported to two examiners that he last worked in 2000. Even giving the claimant the benefit of the doubt about the warehouse job(s), he was still not candid in listing no work in the past 15 years in responding on the Disability Report (Ex-B-3E). More clearly inexcusable and false was his indication on that form that he had never worked (see Ex. B-3E/2). Further, the claimant's testified that he was incarcerated from November 2006- April 2007 for petty theft, for which he is still on probation. This act of stealing adversely impacts on his character and honesty.

The claimant testified that he has participated in many drug and alcohol programs, including while incarcerated, and claimed that he has been clean and sober since being released from prison in September 2005. He stated that he has gotten his life together since then and is no longer homeless -now living with his aunt. The claimant could not explain the wording in a medical report that he has been seizure free for 8 years; testifying that his last seizure was about 4 years ago. While the difference is not particularly material as to the significance of this disorder, the claimant's conflicting statement are further indicative of a lack of credibility. The claimant's testimony of right forearm pain and left leg pain emanate from events in the 1980's (Ex. B-1F/71) with no showing of changed circumstances since the prior Decision.

The earliest medical data in the current file is from mid-late 2003. In September 2003, a study of the cervical spine showed only moderate degenerative disc disease at C5-6 and C6-7, without acute fracture (Ex. B-1F/95). One medical entry in August 2003 reflects the claimant's complaints concerning the left knee (leg) and left neck (Ex. B-1F/72). A study in November 2003 shows chronic obstructive pulmonary disease with extensive bullous emphysematous changes (Ex. B-1F/92). The prior ALJ assessed environmental limitations which the undersigned finds adequately address any problems in this realm. About this time, we also find some chart records from the county sheriff department and a form completed by the claimant, which list medications and histories, including as relates to bipolar disorder (Ex. B-1F/73, 71). Another August 2003 entry relates that the claimant's last seizure was in 1999 (Ex. B-1F/65) and a doctor signed off on seizure precautions (apparently for work in prison, Ex. B-1F/54). The records also relate that the claimant has 20/800 vision, with check–off on a form that he is permanently blind/vision impaired (Ex. B-1F/67, 64, 51, 3F/34). The claimant testified that his bifocals help his vision (recall that the claimant's residual functional capacity includes preclusion from driving as an aspect of work). November -December 2003 entries reflect the claimant's statements that he was found to have an abnormal spleen in 1996 and that had declined a recommended spleenectomy (Ex. B-1F/27, 23). Claimant was also seen for chest pain in late 2003, without indication of cardiac etiology (Ex. 1F/27).

A mental health intake assessment form in April 2005 relates history, including a last suicide attempt in 1994. It offers a current diagnosis of bipolar disorder, NOS. The associated mental status examination reflected normal appearance and behavior; normal mood, appetite and affect; up/down sleep; normal cognition (including organization of thoughts, reality contact and thought quality); no current perceptual disturbances; paranoid thought content (but see normal cognition; above); normal sensorium; limited judgment; normal interview attitude and no

See Next Page



Dewayne Ellison   Page 5 of 9    **15**

current risks of suicide or violence (Ex. B-1F/18-22). A June 2005 report of interview relates that the claimant had been in custody since December 2004. It relates his statements of auditory hallucinations (AH) and mood swings and that he was functioning well until around his arrival in the prison and his report that medications were helping him. Indication was made for a plan of a pharmacological regimen to target mood swings and hallucinations. There are a few references to ADD (attention deficit disorder). The form includes the claimant's denial of a significant (physical) medical history save for seizure disorder. (Ex. B-1F/11-13).

In the composite, the documents discussed above do not show any change in the claimant's status since the prior Decision. They primarily refer to the longitudinal history. There is no indication of any or trauma after the date of the prior Decision. In the physical realm, we find renewed evidence of degenerative disc disease in the cervical spine. We find little else, even in the way of subjective complaints; which factor correlates with the claimant's reference at one time to his seizure disorder was his only concern. That condition is controlled with medication, and the claimant has not had a seizure for several years. The claimant's visual deficits appear longstanding. The aforementioned records in this regard are somewhat confusing to the extent that they suggest that the claimant is blind with correction. This is clarified by visual acuity testing on consultative examination in November 2005 showing corrected vision of 20/50 in both eyes and each eye individually, by observation of the examiner that the claimant can visually move about the office without any help (Ex. B-2F) and by claimant's testimony that bifocals help him. Thus, the ALJ rejects the visual form report discussed above to the extent that the claimant is blind (e.g., 20/200 vision or worse corrected vision). Similarly, most of the data discussed in the mental realm is a rehashing of distant history. Moreover, the mental status examinations are unremarkable in most respects. There are one or two references to attention deficit disorder, but these appear to reflect history only. As consistent with this, claimant explained to consultative psychologist Dr. Kopian that he was put on major medication as a juvenile because he was "too hyper" and described himself as now "okay"; with medication being extremely helpful (Ex. B-8F).

The aforementioned records also reflect the claimant's statements that he was functioning well prior to his imprisonment and his acknowledgment that medications are helpful. We will recall that the prior ALJ allowed for significant mental limitations. The undersigned does not find that the documents outlined above warrant any additional work limitation.

Dr. Paule's November 2005 consultative internal report discusses the claimant's various complaints. It is highly significant that each is of longstanding nature, with origins well prior to the 2002 Decision-and without complaints of exacerbating events thereafter. Dr. Paule described the claimant as appearing in no acute distress, walking and moving easily (without an assistive device), and responding quickly to questions. Dr. Paule indicated that the claimant was able to change position, get on and off the examining table without difficulty. He described him as well developed and overweight (see discussion above).
He related that the claimant had unlimited neck flexion, with pain and limited hyperextension with pain. He reported tenderness in the back with pain and some limitation in flexion, no muscle spasm and negative straight leg raising. Results under examination of the upper extremities were listed as completely normal, albeit earlier reference to grip resting showed greater strength in the non-dominant left than the right (80 vs. 40, and see grip limitations assessed by prior ALJ and

See Next Page



Dewayne Ellison    Page 6 of 9  16

maintained by the undersigned). Examination of the lower extremities was normal save for some tenderness and limited right knee flexion and left knee tenderness and flexion limited by pain and observation of operative scars in the left knee. Neurological findings were completely normal.

Dr. Paule offered multiple diagnostic impressions. He then assessed the claimant in a manner that was quite similar to that found in the prior Decision, except he placed lifting/carrying at 20 pounds occasionally and 10 pounds frequently. To wit, he limited climbing, stooping, kneeling and crouching to occasional (due to the left knee); ruled out work around machinery and heights and precluded driving due to epilepsy, and called for avoidance of airborne allergens because of bronchitis. The undersigned ALJ reiterates that Dr. Paule's assessment clearly relates to longstanding conditions that existed well before the 2002 Decision and that there was no trauma in the interval and very little in terms of subjective complaints or treatment. In testifying, the claimant did not specify problems with lifting or carrying. The ALJ does not find that the evidence warrants a change in this capacity and rejects Dr. Paule's assessment in this regard. On the other hand, and applying similar logic, the ALJ finds that Dr. Paule's failure to include some of the limitations previously assessed is not sufficient reason to deny their continuing validity.

The claimant has not established a change based on the reported accident in August 2007. It is his burden to establish "disability". He must provide evidence showing how his impairments affect his functioning. This evidence must include medical signs and/or laboratory findings. Here, the claimant has not provided any evidence related to the reported accident. He has not shown evidence of any additional treatment. The claimant's appearance with a cane and neck brace is not sufficient basis to warrant a change or to lessen the claimant's burden, particularly as he has used a cane before the reported accident (Ex. B-2F/4) and has longstanding neck complaints.

Dr. Kopian's November 2005 consultative psychological report (Ex. B-3F) is essentially consistent with the longitudinal history and the prior ALJ's evaluation of the claimant's mental impairments. Dr. Kopian related that the claimant had normal appearance (but ambulated with a cane). He was calm and cooperative, alert and fully oriented. Cognition was normal save for some initial errors to lack of focus. Immediate memory was unimpaired, but the claimant exhibited some problems with other areas of recall. Intelligence testing placed the claimant at the low average range. Dr. Kopian diagnosed cocaine dependence, in partial remission; cognitive disorder NOS, probable bipolar disorder NOS, borderline intellectual functioning and anti-social personality traits. (The IQ testing scores seem somewhat low given the claimant's education and work history and the other evidence. The ALJ does not find sufficient evidence to alter the prior ALJ's limited listing of "severe" mental impairments. It does appear that a diagnosis of borderline intellectual functioning may be in order but its ramifications are accounted for in the prior ALJ's assessment- and the undersigned's continuation of it, limiting the claimant to simple 1-2 step job instructions). Dr. Kopian assessed that the claimant is able to understand, remember and complete simple, 2-3 sequence tasks without continuous supervision. He assigned moderate impairment in the claimant's ability to perform detailed and complex tasks, on the basis of his cognitive functioning and memory impairment and in his ability to interact with co-workers on the basis of his tendency to self-isolate. (Ex. B-3F).

See Next Page



Dewayne Ellison   Page 7 of 9  17

As introduced above, the ALJ does not find sufficient data to specifically adopt any "severe" non-mood disorder diagnoses offered by Dr. Kopian. These are not conditions that appear spontaneously absent a trauma. Further, the previous mental status examination in the documents reviewed above does not suggest diagnoses other than those found by the prior ALJ.

In any event, it is ultimately not critical to pinpoint the precise diagnoses. Our concern is with the assessment of capacities and limitations (the same holds true in the physical realm). All of Dr. Kopian's assigned limitations are encompassed in the prior ALJ's residual functional capacity assessment. In fact, the prior ALJ allows for a greater scope and degree of limitations than does Dr. Kopian. The undersigned finds that the prior ALJ's assessment remains effective. Based on the claimant's continuing difficulties in social functioning and in concentration, persistence and pace, the undersigned maintains the general Part B ratings made by the prior ALJ as well (and in daily activities and (lack of) episodes of decompensation) and finds that C criteria remain unsatisfied.

As there has been no change in the claimant's residual functional capacity or any material change in vocational factors, it was unnecessary for the undersigned to secure new vocational expert testimony. Rule 203.25 at Appendix 2 continues to apply as a framework for finding the claimant "not disabled" (it describes an individual with unskilled work or with no work-see discussion above regarding warehouse laborer). The previous vocational expert testimony remains relevant. Even if there has been some decrease in the incidences of the in occupations previously identified, anything within a wide reach of the 89,000 sales counter clerk jobs and the 21,000 charge account clerk jobs would represent a significant number of jobs in the national economy. There is nothing in the DOT's description of these occupations that conflicts with the expert's testimony that they are compatible with the limitations assigned by the prior ALJ and adopted and maintained by the undersigned.

Accordingly, it is the decision of the undersigned ALJ that the claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1. The claimant has not engaged in substantial gainful activity since September 30, 2005.

2. The medical evidence that the claimant has the following impairments which are considered "severe" under the Social Security Act and Regulations: [1] history of seizures; {2} mood disorder, not otherwise specified, versus bipolar depressive disorder, mixed; and {3} rule out osteoarthritis, back, left hand and left knee left.

3. The claimant does not have an impairment or combination of impairments listed or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

See Next Page  

Dewayne Ellison   Page 8 of 9  18

Regarding the "B" criteria of listing 12.04, the claimant is mildly limited in his ability to perform activities of daily living and in the ability to maintain social functioning. The claimant has moderate difficulty maintaining concentration, persistence, and pace. He has not experienced repeated episodes of decompensation of extended duration.

The "C" criteria of Listing 12.04 are not satisfied.

4. Based on the cumulative medical and lay evidence, the claimant's allegations concerning his ability to work are credible only to the extent that they comport with Finding no.5.

5. The claimant has the residual functional capacity to lift and carry up to 25 pounds frequently and 50 pounds occasionally and sit, stand, and walk for 6 hours each of an 8-hour work day (medium work). He can occasionally climb stairs and ramps, crouch, kneel and crawl, but cannot climb ropes, ladders or scaffolding, work at unprotected heights, around hazardous machinery or dust, fumes, or toxins, or drive. The claimant can occasionally grip, grasp and twist with his left upper extremity/hand. He is limited to simple 1or 2-step instructions, requires a job which allows for only brief superficial contact with co-workers and the general public and cannot perform a job which requires high production such as rapid assembly line work.

6. The claimant has no past relevant work.

7. The claimant has an 11th grade ("limited") education.

8. The claimant is a "younger individual."

9. Based on an exertional capacity for medium work and the claimant's age, education, and (lack of) work experience, section 416.969 of Regulations No. 16 and Rule 203.25, Table No. 3 of Appendix 2, Subpart P, Regulations No. 4, directs that the claimant, considering his residual functional capacity, age, education and (lack of) work experience, be found "not disabled."

10. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of medium work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy which he can perform: sales counter clerk (approximately 89,000) and charge account clerk (approximately 21,000 jobs).

See Next Page



Dewayne Ellison    Page 9 of 9    **19**

11. The claimant was not under a "disability" as defined in the Social Security Act, at any tie through the date of this decision.

### DECISION

It is the decision of the Administrative Law Judge that, based on the application protectively filed on September 30, 2005, the claimant is not eligible for Supplemental Security Income payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act.

Lawrence D Wheeler
Administrative Law Judge

Date